IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID BRIGHTWELL,
    Plaintiff,
    v.                                 *    CIVIL ACTION NO. DKC-12-1520

MOULTRIE, et al.,
    Defendants.

***

**MEMORANDUM OPINION**

Pending is the motion of Andrew Moultrie, M.D., John Moss, PA, and Damon Fayall[1] (the "Medical Defendants") to Dismiss, or in the Alternative Motion for Summary Judgment. ECF No. 18. Plaintiff has responded. ECF No. 23. Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the dispositive motion filed by the Medical Defendants will be granted.

**Background**

Plaintiff, by way of amended complaint, states that while incarcerated at the Jessup Correctional Institution ("JCI") in Jessup, Maryland, he was denied adequate medical care. In addition to failure to provide medication to control high blood pressure ("HBP"), Plaintiff alleges that JCI staff refuse to provide care for injuries received while he was housed at Roxbury Correctional Institution ("RCI"). Plaintiff states that on June 6 and 7, 2011, he informed unidentified nurses that he did not have his blood pressure medication. ECF Nos. 1 & 8. Plaintiff states that on June 9, 2011, his "chest nerves started jumping, bad headaches, and very bad chest pains." *Id*. Plaintiff indicates that on June 14, 2011, he filed a sick call slip indicating he did not have his blood pressure medication. On June 15, 2011, he was taken to JCI medical department, his blood pressure was 240/110 and he was given medication to lower his blood pressure. On June 16, 2011, plaintiff reports his blood pressure was 148/100 because he had not received his

---

[1] The Clerk shall be directed to correct the spelling of Defendant Damon Fayall's name.

blood pressure medication. *Id*. Plaintiff claims that he was again without blood pressure mediation on January 23, 2012. *Id*. Plaintiff states that he wrote to Damon Fayall, Hospital Administrator on January 25, 2012, advising him that he had been without his blood pressure medication for three days. *Id*.

Plaintiff states that on January 27, 2012, he was taken to Moultrie while suffering chest pains but Moultrie refused to see him. Plaintiff was then taken to the dispensary and his blood pressure was 150/90. *Id*.

Plaintiff also alleges that he submitted a sick call slip and wrote to Fayall regarding injuries he sustained while incarcerated at RCI.[2] Plaintiff states while he was provided pain medication for injuries sustained at RCI, he did not receive anything that "could cure his medical injuries." *Id*. Additionally, he claims that from August 26, 2011 to September 12, 2011, he did not receive his pain medication as his prescription was permitted to lapse. *Id*.

Plaintiff states that on October 21, 2011, he was seen by Dr. Moultrie. Plaintiff states he advised Moultrie of all his problems and requested an MRI, but Moultrie denied the request. *Id*.

Plaintiff claims he was seen by PA Moss on November 29, 2011, and described all of his medical injuries to Moss but Moss "started attempting to make excuses for the plaintiff's injuries to conspire and aid and abet Roxbury Correctional Medical Staff as well as the correctional officers of Roxbury Correctional Institution attack and beating of the plaintiff on 2/5/11." *Id*. He claims that Moss advised him his left knee injury was from praying. Plaintiff states that he had no problems with his left knee until his knee "was busted by correctional officers on 2/5/11." *Id*.

---

[2] Plaintiff's complaints concerning events arising at RCI are not before the court in these proceedings.

Plaintiff states that he was seen by Moultrie on February 10, 2012, and advised that he would be seen by an orthopedist. Plaintiff states that Moultrie began making excuses for his left knee injury, stating that it was due to his praying. *Id*.

On February 13, 2012, Plaintiff again wrote to Fayall advising him that Moultrie was making excuses for the RCI officers. Plaintiff again wrote to Fayall on March 5, 2012, advising him that he had not received his pain medication on that date.

Plaintiff was seen by an orthopedic doctor on March 13, 2012, but only for his right wrist and arm injury, not for his complaints of knee, back and head pain. The following day, plaintiff states, he wrote a letter of complaint to Fayall. *Id*.

Plaintiff was evaluated by Moss on April 4, 2012, but Moss could not read the orthopedic doctor's writing. The following day, Plaintiff wrote another letter to Fayall complaining that his medical needs were not being met. *Id*. Plaintiff submitted a sick call slip on April 30, 2012, and was seen by Moss on May 3, 2012. Moss advised Plaintiff that the orthopedic doctor did not recommend anything. Plaintiff alleges that JCI medical staff are conspiring to cover up the assault upon him that he alleges occurred at RCI. *Id*.

Plaintiff further alleges that he has three infected toes and medical staff have done nothing to treat them. *Id*.

Plaintiff alleges that on May 14, 2012, he filed a sick call slip advising staff that his medication was due to expire on May 20, 2012. ECF No. 8. Plaintiff was seen by Moultrie on May 16, 2012, who advised Plaintiff that all of his medications were being renewed. Plaintiff submitted another sick call slip on May 24, 2012, indicating he needed his mediations renewed. On May 27, 2012, Plaintiff states he submitted an administrative remedy request to the Warden at JCI. On May 28, 2012, Plaintiff reports he suffered from "bad chest pain and jumping of the left

side of his chest nerves." Plaintiff was seen that day by unidentified medical staff who advised him that there was no record that Moultrie had ordered his medication be renewed. *Id*. Plaintiff again wrote to the Warden who responded that Plaintiff needed to be reeducated on how to take his blood pressure medication. *Id*.

Lastly, Plaintiff states that on July 19, 2012, he was told to pack his property so that he could be transferred to a single cell. Plaintiff states that "it was all a conspire [sic] effort to trick him and the plaintiff was taken to JCI property to be transferred." *Id*. Plaintiff states this was a ruse to remove the original response from the Warden regarding his ARP and replace it with a different response.

Plaintiff's uncontroverted medical records demonstrate the following:

A. Blood Pressure Medication

Plaintiff submitted a sick call slip requesting refill of his medications on May 23, 2011. The medications were ordered on May 27, 2011. ECF No. 18, Ex. A, p. 118. An error by an outside vendor caused Plaintiff's medications to be shipped to a different prison. *Id*., p. 49. Defendants concede that Plaintiff was without his blood pressure medication because they were unavailable during the dates claimed in June of 2011. ECF No. 18.

Despite the lack of medication, Plaintiff did not file any additional sick call slips. On June 16, 2011, at approximately 1:45 a.m. Plaintiff complained he was not feeling well and was examined by medical staff. Plaintiff's blood pressure was elevated and he was given .2 mg of clonidine to lower his pressure. Plaintiff indicated the medicine provided relief. *Id*., p. 51. Plaintiff was examined later that day by Moss. Moss noted that Plaintiff's medication had been improperly delivered to another institution and noted the file for follow up to correct the problem.

The following day, Plaintiff was provided with a supply of "keep on person" medications, including medication for HBP. *Id*., p. 49, 174.

On May 28, 2012, Plaintiff visited the medical unit complaining he was out of his blood pressure medication. *Id*., p. 11. Plaintiff was re-educated concerning his medication, his medication was continued, and he was advised to follow-up his symptoms worsened. *Id*. p. 8-11.

B. Orthopedic injuries

In response to Plaintiff's complaints of knee, back, head and neck injuries arising from the February 5, 2011 incident at RCI, Plaintiff was seen on April 19, 2011, by medical providers. X-rays were taken. The results were negative. *Id*., p. 121.

Plaintiff continued complaining of pain and was again examined on May 10, 2011, July 12, 2011, and August 11, 2011. *Id*., p. 57, 47, and 45. Plaintiff's subjective complaints were recorded. No objective findings of injuries were noted other than mild left knee swelling over the tibia, found during the May 10, 2011 examination. Plaintiff was prescribed Neurontin for pain. The prescription expired on August 26, 2011. *Id*.

Plaintiff submitted a sick call slip on August 12, 2011, seeking to see the physician rather than a physician's assistant to discuss his desire for an MRI and assess his continuing complaints of pain. Id., P. 111. On August 16, 2011, he was referred to the chronic care clinic and scheduled to be seen there on September 2, 2011. A notation was made on Plaintiff's sick call slip that his medications were renewed on August 16, 2011 through September 5, 2011, Id. p. 111.

Plaintiff was seen on September 9, 2011 by Moultrie in the chronic care clinic. His prescription for Neurontin for pain management was renewed. *Id*., p. 42-43. He was again evaluated by Moultrie on November 1, 2011. Moultrie noted diminished right hand grip and limited rotation of the cervical spine as well as limited extension of the spine. Plaintiff's

medications were continued. Moultrie ruled out an MRI pending a better neurological examination and x-rays. *Id*., p. 36-37. The x-rays of Plaintiff's cervical spine, taken that same day, revealed age-related degenerative changes. *Id*., p. 38.

Additional x-rays of Plaintiff's wrist, knee and shoulder were taken on November 21, 2011. The results were negative. *Id*., p. 35. Plaintiff was referred for an orthopedic consultation concerning his right forearm pain in February of 2012. *Id*., p. 23. The results of the consult were not provided to the court.

On June 13, 2012, Plaintiff was again evaluated by Moultrie in the chronic care clinic. Notes reflect that Plaintiff's Neurontin dose was increased, he was directed to follow the previously prescribed exercise program, and was educated and reassured regarding his conditions. Moultrie reviewed Plaintiff's diagnostic study results and medications with him. *Id.,* p. 3.

Throughout the period at issue, Plaintiff was prescribed pain medication including Neurontin, Aspirin, and Ibuprofen. *Id*., p. 126-183.

C.  Infected toes

On April 9, 2012, Plaintiff submitted a sick call slip asking that his toenails be clipped and complaining of infected toenails. He was scheduled to see Moss on April 11, 2012, but did not report for his appointment. *Id*. p. 79. No other complaints are found in sick call slips regarding Plaintiff's toes. *Id*. Ex. A.

**Standard of Review**

A.  Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does

6

not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.   Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."

7

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Discussion**

A.   Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a Plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"

*Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a medical provider linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refutes presence of doctor's subjective knowledge).

Plaintiff's allegations that he was not provided necessary medical treatment for hypertension, orthopedic injuries, and a toe infection are belied by the record. Plaintiff was evaluated in a timely manner by medical providers as to his claims regarding hypertension and orthopedic injuries and was provided medication to treat each of his complaints. Plaintiff's hypertension was managed with medication. Due to an outside vendor error Plaintiff's medication was shipped to the wrong facility. When Defendants became aware of the mix-up they acted quickly to correct the error. The court need not determine whether suffering from untreated high blood pressure for a brief period of time constitutes a serious medical need, as the court finds that Defendants were not deliberately indifferent. To the contrary, when Plaintiff presented with symptoms of high blood pressure he was provided treatment and when the error concerning the

delivery of his medication was discovered, it was immediately corrected. Plaintiff's claim regarding denial of medication to treat his HBP states nothing more than, at most, a claim of negligence on the part of the unnamed vendor.

As to Plaintiff's complaints regarding injuries to his knee, neck and head, the record demonstrates that he was repeatedly evaluated, x-rays were taken, and Plaintiff was provided analgesic medication. He was referred for an orthopedic consultation regarding complaints about wrist and forearm pain. His complaints were treated in a conservative manner.

In regard to Plaintiff's complaints of untreated toe infection, the record shows that Plaintiff complained on only one occasion. For reasons unknown, he did not appear for his scheduled sick call appointment and thereafter voiced no further complaints. It cannot be said that Defendants were deliberately indifferent to a serious medical need where, as here, Plaintiff did not alert them to the continuing nature of the need.

There is no evidence that any further treatment was deemed necessary as to any of Plaintiff's complaints. Mere disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Plaintiff has failed to submit any evidence to support his claim, or to put the material facts of this case in dispute. *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991). Although the non-moving party may rely upon a verified complaint when allegations therein are based on personal knowledge, *see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991), Plaintiff's Complaint is not verified.

In granting summary judgment to Defendants the court does not imply that Plaintiff is not entitled to medical treatment for his serious conditions. The right to treatment, however, is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977) (emphasis added). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849(4th Cir.1985), citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970). There are no exceptional circumstances in this case. The Plaintiff has been evaluated repeatedly and provided appropriate treatment.

B. Conspiracy

Plaintiff claims that all Defendants conspired together to violate his constitutional rights. To establish a civil conspiracy under § 1983, Plaintiff must present evidence that Defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996). An essential element for a claim of conspiracy to deprive Plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators. *See Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1006-07 (4th Cir.1987). Without an agreement, the independent acts of two or more wrongdoers do not amount to a conspiracy. *See Murdaugh Volkswagon v. First Nat'l Bank*, 639 F.2d 1073, 1075-76 (4th Cir.1981). Plaintiff must allege facts establishing that Defendants shared a "unity of purpose or a common design" to injure him. *See Am. Tobacco Co. v. United St*ates, 328 U.S. 781, 809-10 (1946).

Plaintiff's claim of conspiracy is vague and conclusory. He alleges Defendants conspired to "cover up" the actions of correctional staff and medical personnel at RCI. Plaintiff's medical records, demonstrate that at each encounter with medical staff his injuries were documented as were his claims that his injuries arose as a result of the alleged assault by correctional staff. Conclusory allegations of a conspiracy are insufficient to state a claim. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2nd Cir. 1997) (unsupported claim of conspiracy to issue false disciplinary reports fails to state claim); *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988) ("Allegations of conspiracy . . . must be pled with sufficient specificity and factual support to suggest a meeting of the minds.") (quotation omitted); *Langworthy v. Dean*, 37 F. Supp.2d 417, 424-25 (D. Md. 1999).

## Conclusion

In light of the foregoing, Defendants are entitled to summary judgment. A separate Order follows.

Date:   August 19, 2013                              /s/
                                             DEBORAH K. CHASANOW
                                             United States District Judge